Michael J. Gearin, WSBA # 20982
David C. Neu, WSBA #33143
Brian T. Peterson, WSBA #42088
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104-1158
(206) 623-7580

Honorable Christopher M. Alston
Chapter 11

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>NORTHWEST TERRITORIAL MINT, LLC<br><br>Debtor. | Case No. 16-11767-CMA |
| MARK CALVERT, as Chapter 11 Trustee of NORTHWEST TERRITORIAL MINT, LLC<br><br>Plaintiff,<br><br>v.<br><br>DIANE ERDMANN, an individual,<br><br>Defendant. | Adv. Proc. No. 16-01217<br><br>SECOND AMENDED COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS AND FOR TURNOVER OF ESTATE PROPERTY |

Mark Calvert, as Chapter 11 Trustee (the "Trustee") of Northwest Territorial Mint, LLC ("NWTM" or "Debtor") by and through counsel of record, K&L Gates LLP, for his claims against Diane Erdmann ("Erdmann" or "Defendant") alleges and avers as follows:

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 1

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 1 of 13

## I. NATURE OF THE ADVERSARY PROCEEDING

1. On April 1, 2016, the Debtor commenced this case by filing a voluntary petition under chapter 11 of the United States Bankruptcy Code. On April 11, 2016, the Court entered an order appointing Mark Calvert as chapter 11 Trustee.

2. Plaintiff brings this adversary proceeding pursuant to §§ 105(a), 502(b) and (d), 542, 544(b), 548, 550(a), 551, and 1107 of the Bankruptcy Code; the Uniform Fraudulent Transfer Act, RCW 19.40.011 et seq.; and other applicable laws, to set aside and recover certain fraudulent transfers made to Defendant and preserve said property for the benefit of NWTM.

## II. PARTIES

3. Plaintiff is the Chapter 11 Trustee of NWTM.

4. Diane Erdmann is an individual. Diane Erdmann is a transferee of fraudulent conveyances made by NWTM and/or is an individual for whose benefit such transfers were made.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334(b) over the subject matter of this proceeding because the claims asserted herein arise under Chapter 11 of the Bankruptcy Code and are related to a case pending under the Bankruptcy Code in the Bankruptcy Court.

6. On information and belief, Defendant is subject to the jurisdiction of this Court by virtue of her contacts with the United States.

7. Core proceedings include proceedings to determine, avoid, or recover fraudulent conveyances and proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims. 28 U.S.C. § 157(b)(2)(H), (O). This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157 because it arises in or under the Debtor's Chapter 11 case and is a proceeding to determine, avoid, or recover fraudulent conveyances and it affects the liquidation of

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 2

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 2 of 13

the assets of the estate. Regardless of whether this is a core proceeding, or if it is one that, although core, may not be adjudicated without consent to final judgment by a bankruptcy court, the Trustee consents to the entry of final orders and judgment by the Bankruptcy Court. Defendant is notified that Rule 7008(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") requires Defendant to plead whether this proceeding is core or non-core and, if non-core, whether consent is given to the entry of final orders and judgment by the Bankruptcy Court. Defendant shall also indicate whether she consents to entry of final orders or judgment by the Bankruptcy Court if this proceeding is one that, although core, may not be adjudicated without consent to final judgment by a bankruptcy court.

8. Pursuant to 28 U.S.C. § 1409(a), venue of this adversary proceeding in the Bankruptcy Court in the Western District of Washington is proper because NWTM's bankruptcy case is pending in this district.

## IV. FACTUAL ALLEGATIONS

A. General Background

9. At the time of its bankruptcy filing, NWTM billed itself as the largest private mint in the United States. As of April 1, 2016 it had approximately 240 employees located at facilities in six states. NWTM's business operations included custom minting of medals and commemorative coins as well as on-line and walk-in sales of precious metals and coins (the "Bullion Operations"). NWTM also stored precious metals and bullion on behalf of customers pursuant to Storage Agreements under which the owner of the bullion or metals paid rent to NWTM. Despite its size, and the breadth of its business, all facets of its operations were exclusively controlled by Ross Hansen, its 100% owner. Ross B. Hansen ("Ross Hansen" or "Hansen") oversaw every aspect of NWTM's operations, and notwithstanding organization charts showing different levels of management, every employee effectively reported directly to Ross Hansen.

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 3

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 3 of 13

10. Diane Erdmann is Ross Hansen's *de facto* wife. The relationship between Diane Erdmann and Ross Hansen approximates a marital relationship. In 2000, Diane Erdmann moved in with Ross Hansen. For the first two years of their cohabitation, they lived in an apartment located in NWTM's facility. When NWTM moved facilities in 2002, Diane Erdmann and Ross Hansen rented a house together. Since at least 2001, Diane Erdmann has been exclusively responsible for all of the couple's household finances. At all relevant times to this action Diane Erdmann has had no source of income and has depended on Ross Hansen for her support. Diane Erdmann and Ross Hansen own several pets together. Accordingly, Diane Erdmann is an insider of NWTM.

B. NWTM's Insolvency

11. Since at least 2008, and through the date of its bankruptcy filing, NWTM has been insolvent as defined in §101(32) of the Bankruptcy Code and RCW 19.40.021. Moreover, since at least 2008 through the date of its bankruptcy filing, NWTM had unreasonably small capital in relation to the business it was engaged in and NWTM intended to incur, or believed that it would incur debts beyond its ability to pay as such debts matured.

12. According to NWTM's 2008 tax return, at that time its liabilities exceeded its assets by approximately $1.5 million. NWTM only became more insolvent between 2008 and 2016, with the exception of 2011 when the company realized some temporary hedging gains associated from speculation on commodities, mostly silver.

13. Since at least 2008, NWTM has experienced chronic cash shortages that precluded it from fulfilling customer bullion orders in a timely manner. As a result, NWTM engaged in a practice of repeatedly delaying the delivery date for customer orders, allowing the time for it to collect cash from deposits on subsequent orders. Cash collected as deposits from newer customers was routinely used to pay for purchases of bullion to fulfill older customer orders. The industry standard for fulfillment of a bullion sale transaction is delivery of bullion orders in less than 2 weeks.

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 4

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 4 of 13

From 2008 through 2011 NWTM's average delivery time was approximately two months. After 2011 NWTM's average delivery time ranged from between three and four months.

14. Since at least 2011, as a result of its insolvency, NWTM stole bullion from individuals who were paying NWTM rent to store bullion on their behalf, and used the stolen bullion to fulfill customer orders. Diane Erdmann referred to the process of stealing stored bullion from customers as "poaching" in internal communications.

15. NWTM's written policy, per its website, was to ship bullion within five days of receipt of payment. Notwithstanding this policy, NWTM's customers frequently complained to the Consumer Protection Division of the Washington State Attorney General's Office about delays in receiving precious metals they ordered from NWTM.

16. On February 6, 2008, the Washington State Attorney General commenced a lawsuit in King County, Washington, against NWTM and Ross Hansen, alleging that NWTM and Ross Hansen had violated the Unfair Business Practices—Consumer Protection Act, chapter 19.86 RCW (the "AG Complaint"). In particular, the Attorney General alleged that NWTM violated the Consumer Protection Act by misrepresenting delivery dates, enforcing an unfair refund policy, and failing to respond to consumer complaints.

17. In September 2008, the parties settled the AG Complaint. As a result of the settlement, the Attorney General obtained a consent decree against Ross Hansen and NWTM. The consent decree, which was entered on September 18, 2008, restrained NWTM from, among other things, failing to ship orders after the time it represented that it would ship such orders unless it timely notified the affected customers, and offered the customers the option of buying back the orders. NWTM further agreed to pay $20,000 in civil penalties plus $38,763.49 in costs and attorney's fees.

18. After entry of the 2008 consent decree, NWTM's financial condition grew worse, and the delay time for delivery of customer orders only increased. As of year-end 2008, the average time

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 5

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 5 of 13

to fill bullion customer orders exceeded 50 days. As of year-end, 2015, the average time to fulfill bullion customer orders exceeded 120 days. As of the petition date, the value of outstanding bullion orders that were unfulfilled was approximately $25.5 million. As of the petition date, the Debtor had insufficient resources to fulfill these customer orders.

C. The Transfers

19. Since at least 2007, Diane Erdmann maintained, in her personal name, an American Express Platinum Card account (the "Amex Account"). Ross Hansen was an additional authorized user of Diane Erdmann's Amex Account.

20. Diane Erdmann has always been legally liable for the charges incurred on the Amex Account. NWTM did not guarantee Diane Erdmann's obligations under the Amex Account, and had no payment obligation to American Express with respect to the Amex Account.

21. Notwithstanding the lack of legal obligation to do so, during the period relevant to the claims asserted herein, NWTM paid all of the bills related to the Amex Account for the benefit of Diane Erdmann indiscriminately, without any regard whatsoever for whether the charges were related to NWTM business operations and notwithstanding the fact that she provided no substantiation to NWTM for expenditures beyond a dollar amount to be paid. A list of the payments made by NWTM for the benefit of Diane Erdmann is set-forth on the attached Exhibit A (the "Payment Transfers" and each, a "Payment Transfer"). As a result of the charges on the Amex Account, which NWTM paid for, Dianne Erdmann was also awarded millions of AMEX Membership Reward Points (the "Reward Points" and the transfer of such to Diane Erdmann, a "Reward Transfer"), which can be redeemed for travel and shopping. Hereafter, the Payment Transfers and Reward Transfers shall be collectively referenced as the "Transfers."

22. NWTM did not receive reasonably equivalent value for each of the Transfers. During all relevant times, Diane Erdmann used the Amex Account to make significant personal purchases that provided no value to and did not benefit NWTM. A list of charges that appear to have been

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 6

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 6 of 13

made for personal purchases is attached as <u>Exhibit B</u> hereto[1]. NWTM received no value in exchange for satisfying charges on the Amex Account which were made for the personal benefit of Diane Erdmann or Ross Hansen, and, accordingly, each of the Transfers was greater than any value conferred on NWTM by Diane Erdmann.

23. At the time of the Transfers, NWTM intended to incur or reasonably should have believed that it would incur debts beyond its ability to pay as they came due. Based on NWTM's cash position, and its inability to fulfill customer orders without using cash from subsequent orders or stealing from storage customers, Ross Hansen and Diane Erdmann knew that NWTM would never be able to satisfy its obligations to creditors. In essence, NWTM's Bullion Operations were run in a manner similar to a "Ponzi" or "lapping" scheme, in that the business was entirely dependent on using cash from deposits provided by new customers to fulfill obligations to existing creditors. In itself, such swapping of a new creditor for an old creditor results in no net reduction of liabilities. Rather, it merely perpetuates fraudulent activity and postpones the inevitable demise of the company. Perversely, because of the theft and fraud being perpetrated, Ross Hansen's only option was to continue running the Bullion Operations even though it meant incurring more and more obligations that he, Diane Erdmann, and NWTM knew could never be satisfied.

24. Ross Hansen knew from prior experience that NWTM's business model was doomed to failure. Beginning in 1981, Ross Hansen, doing business as Auburn Precious Metals and subsequently, beginning in 1984, as Northwest Territorial Mint (collectively, the "Previous Mint"), ran a similar bullion trading operation to the Bullion Operations. On information and belief, the Previous Mint engaged in similar practices as NWTM, such as not timely filling orders. In 1989, Ross Hansen and his sole proprietorship the Previous Mint was forced to file for Chapter 11 relief (the "Previous Mint Bankruptcy").

---

[1] The list of what appears to constitute personal charges contains charges in amounts exceeding $815,000. The burden is on Ms. Erdmann to show that any of the charges on her American Express account provided value to the debtor under § 548(c) of the Bankruptcy Code and RCW 19.40.081.

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 7

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 7 of 13

25. A chapter 11 trustee was appointed within a few months of the commencement of the Previous Mint Bankruptcy. The chapter 11 trustee terminated the Previous Mint's business operations shortly after her appointment, and the case converted to a proceeding under Chapter 7 of the Bankruptcy Code a few weeks later. Ultimately, the return to creditors in the Previous Mint Bankruptcy was insignificant.

26. Notwithstanding the fact that NWTM knew that it could not satisfy its creditors, and had to resort to theft of bullion to full customer purchases, NWTM diverted cash resources for Diane Erdmann's benefit that otherwise could have been used to satisfy company obligations to creditors. The result was an intentional transfer of NWTM assets to or for the benefit of an insider, Diane Erdmann. These transfers were made with the intent to defraud creditors who received no benefit from the payment of personal expenses of Diane Erdmann.

27. NWTM and Diane Erdmann concealed the Transfers from creditors, including the Internal Revenue Service. On information and belief, Diane Erdmann did not file a federal income tax return during the periods relevant to this action. NWTM did not file a federal tax return after 2010. NWTM never issued a W-2 to Diane Erdmann reporting the Transfers as income as would have been required by 20 CFR 1.62-2. Moreover, Diane Erdmann never provided NWTM with adequate supporting documentation to justify reimbursement of expenses or for it to make any sort of determination as to whether expenses she incurred were for NWTM's business purposes. Creditors of NWTM had no way to know that NWTM had funded hundreds of thousands of dollars of personal expenses of Diane Erdmann through payments of her American Express charges.

## V. FIRST CAUSE OF ACTION
**Action to Avoid Intentionally Fraudulent Transfers of Money and Other Property and Preserve Same for the Benefit of the Estate Pursuant to RCW 19.40.041(a)(1) and 19.40.071, and Bankruptcy Code §§ 544(b), 548, 550(a), and 551**

28. The Trustee repeats and realleges each and every allegation contained in paragraphs 1 through 27 as if fully set forth herein at length.

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 8

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 8 of 13

29. At all relevant times there were one or more creditors of NWTM who held and now hold unsecured claims against the NWTM that were and are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e).

30. The Transfers were made with the actual intent to hinder, delay, or defraud creditors of NWTM.

31. As a result of the foregoing, pursuant to RCW 19.40.041(a)(1) and 19.40.071 and Bankruptcy Code §§ 544(b), 548, 550(a), and 551, the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers from Defendant for the benefit of the NWTM.

## VI. SECOND CAUSE OF ACTION
**Action to Avoid Constructively Fraudulent Transfers of Money and Property and Preserve Same for the Benefit of the Estate Pursuant to RCW 19.40.041(a)(2), RCW 19.40.051(a), and RCW 19.40.071, and Bankruptcy Code §§ 544, 548, 550(a), and 551**

32. The Trustee repeats and realleges each and every allegation contained in paragraphs 1 through 31 above as if fully set forth herein at length.

33. At all relevant times there were one or more creditors of NWTM who held and now hold unsecured claims against NWTM that were and are allowable under Bankruptcy Code § 502 or that were and are not allowable only under Bankruptcy Code § 502(e).

34. NWTM did not receive reasonably equivalent value in exchange for the Transfers.

35. NWTM was insolvent at the time it made the Transfers.

36. At the time NWTM made the Transfers, NWTM was engaged in or was about to engage in a business or transaction for which the property remaining in its hands after the Transfers was an unreasonably small capital.

37. At the time NWTM made the Transfers, NWTM had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay as the debts matured.

38. As a result of the foregoing, pursuant to RCW 19.40.041(a)(2), RCW 19.40.051(a),

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 9

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 9 of 13

and RCW 19.40.071 and Bankruptcy Code §§ 544(b), 548, 550 and 551, the Trustee is entitled to a judgment: (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers from Defendant for the benefit of NWTM.

## VII. THIRD CAUSE OF ACTION
### Action to Recover the Erdmann Transfers under Principles of Unjust Enrichment and Restitution

39. The Trustee repeats and realleges each and every allegation contained in paragraphs 1 through 38 above as if fully set forth herein at length.

40. At the time NWTM made the Erdmann Transfers, NWTM was engaged or was about to engage in a business or transaction for which the property remaining in its hands after each of the Erdmann Transfers was an unreasonably small capital.

41. Under such circumstances, retention of the Erdmann Transfers would constitute unjust enrichment and NWTM is entitled to restitution of the full amount of the Erdmann Transfers to the Defendant, plus interest.

## VIII. FOURTH CAUSE OF ACTION
### Imposition of Constructive Trust

42. The Trustee repeats and realleges each and every allegation contained in paragraphs 1 through 41 above as if fully set forth herein at length.

43. The Court should establish a constructive trust over the Reward Points for the benefit of the bankruptcy estate of NWTM.

## IX. FIFTH CAUSE OF ACTION
### Turnover

44. The Trustee repeats and realleges each and every allegation contained in paragraphs 1 through 43 above as if fully set forth herein at length.

45. The Reward Points are property of the bankruptcy estate pursuant to 11 U.S.C. §541.

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 10

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 10 of 13

46. Pursuant to 11 U.S.C. §542, any person in possession, custody, or control of property of the estate must turnover such property to the Trustee. Diane Erdmann, therefore, must turnover the Reward Points to the Trustee.

## X. PRAYER FOR RELIEF

**WHEREFORE,** the Trustee respectfully requests that this Court enter an order and judgment in favor of the Trustee and against the Defendant as follows:

1. On the First Cause of Action, pursuant to RCW 19.40.041(a)(1) and 19.40.071, and Bankruptcy Code §§ 544(b), 548, 550(a), and 551, (a) avoiding and preserving the Transfers, (b) directing that the Transfers be set aside, and (c) recovering the Transfers, or the value thereof, from Defendant for the benefit of NWTM;

2. On the Second Cause of Action, pursuant to RCW 19.40.041(a)(2), RCW 19.40.051(a), and 19.40.071, and Bankruptcy Code §§ 544(b), 548, 550, and 551, (a) avoiding and preserving the Transfers made between April 1, 2012 and April 1, 2016 (the "Four Year Transfers"), (b) directing that the Four Year Transfers be set aside, and (c) recovering the Four Year Transfers, or the value thereof, from Defendant for the benefit of NWTM;

3. On the Third Cause of Action, recovery of the Transfers, or the value thereof, from Defendant for the benefit of NWTM;

4. On the Fourth Cause of Action, imposition of a constructive trust, for the benefit of the estate, over the Reward Points;

5. On the Fifth Cause of Action, an order directing Defendant to immediately turnover the Reward Points to the Trustee;.

5. On all Causes of Action, awarding Plaintiff prejudgment interest from the date on which the Erdmann Transfers were made at the statutory rate of 12 percent per annum;

6. Awarding Plaintiff all applicable costs, fees, and disbursements of this action permitted by law;

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 11

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA   Doc 23   Filed 12/23/16   Ent. 12/23/16 11:24:01   Pg. 11 of 13

7. Disallowing any claims of Diane Erdman in this case pursuant to § 502(d) of the Bankruptcy Code; and

8. For such further relief as the Court deems just, proper, and equitable.

DATED this 23rd day of December, 2016.

         K&L GATES LLP

         By: /s/ David C. Neu
          Michael J. Gearin, WSBA # 20982
          David C. Neu, WSBA #33143
          Brian T. Peterson, WSBA #42088
         Attorneys for Mark Calvert, Chapter 11 Trustee

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 12

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA   Doc 23   Filed 12/23/16   Ent. 12/23/16 11:24:01   Pg. 12 of 13

## CERTIFICATE OF SERVICE

The undersigned declares as follows:

That she is a Sr. Practice Assistant in the law firm of K&L Gates LLP, and on December 23, 2016, she caused the foregoing document to be filed electronically through the CM/ECF systems which caused Registered Participants to be served by electronic means, as fully reflected on the Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the State of Washington and the United States that the foregoing is true and correct.

Executed on this 23rd day of December, 2016, at Seattle, Washington.

_____
Benita G. Gould, Sr. Practice Assistant

SECOND AMENDED COMPLAINT TO AVOID AND
RECOVER FRAUDULENT TRANSFERS - 13

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Case 16-01217-CMA    Doc 23    Filed 12/23/16    Ent. 12/23/16 11:24:01    Pg. 13 of 13